Kelsey I. Nix (NY Bar No. 2191633)
Michael W. Mitchell
C. Michael Anderson
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220

Andrew W.J. Tarr
ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Suite 2300
Charlotte, NC 28202
Telephone: (704) 377-2546

*Counsel for First-Citizens Bank & Trust Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>SVB FINANCIAL GROUP,<br><br>Debtor.[1] | Chapter 11<br>Case No. 23-10367(MG) |
| FIRST-CITIZENS BANK & TRUST COMPANY<br>Plaintiff,<br><br>v.<br><br>SVB FINANCIAL GROUP and SVB FINANCIAL TRUST,<br><br>Defendants. | Adv. Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

First-Citizens Bank & Trust Company ("FCB"), by and through its attorneys, brings this complaint (the "Complaint") against SVB Financial Group ("SVBFG") and SVB Financial Trust (the "Trust"), as successor-in-interest to SVBFG, in the above-captioned chapter 11 case (the "Chapter 11 Case"), and alleges and states:

## SUMMARY OF THE ACTION

1. FCB brings this action seeking a declaration that it owns the Silicon Valley Bank ("SVB") trademark portfolio and related branding assets (including domestic and foreign trademarks, domain names, and social media accounts) (collectively, the "SVB IP") as a result of its purchase of substantially all assets of SVB, a former subsidiary of SVBFG, under the Purchase and Assumption Agreement dated March 27, 2023 between FCB and the Federal Deposit Insurance Corporation (the "FDIC") (the "Purchase Agreement") and in accordance with Title 12 of the United States Code. A true and accurate copy of selected pages of the Purchase Agreement is attached as **Exhibit 1**. A non-exhaustive list of the trademarks at issue (the "SVB Trademarks") is attached as **Exhibit 2**. Lists of the SVB domain names and social media accounts at issue are attached as **Exhibits 3** and **4,** respectively.

2. To the extent that the Court determines that there is any SVB IP that FCB does not currently own, FCB seeks a declaration that it acquired, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use the SVB IP.

3. Despite FCB's purchase of substantially all assets of SVB from the FDIC, the Trust contends that it retains ownership of the SVB IP, that SVBFG allowed SVB to use the SVB IP (including the SVB Trademarks) without a written license, and that the SVB IP was not included in the SVB assets that FCB acquired from the FDIC because neither SVB nor the FDIC had rights to the SVB IP for FCB to acquire. In connection with seeking confirmation of its Chapter 11 Plan,

SVBFG and FCB agreed to reserve the SVB IP ownership dispute for this court to determine later if negotiations between the parties were not successful. The Confirmation Order acknowledged the dispute and confirmed that "the ***rights asserted by FCB*** to the Silicon Valley Bank copyrights, trademarks, internet domain names and websites, … ***shall be preserved*** and shall not be discharged, released, waived, converted, enjoined, or otherwise adversely affected by (without limitation) entry of this Confirmation Order, confirmation of the Plan, the Debtor's discharge, or any Plan injunction; [and] ***FCB may file an adversary proceeding in the Chapter 11 Case … in order to seek to assert any such rights***, and, if FCB files such adversary proceeding, the ***preservation of rights in this paragraph shall extend through the entry of a final order in, or consensual resolution*** of, such adversary proceeding." *See* Bankr. Dkt. ECF 1379 at 66-67, including paragraph 151 of the Confirmation Order (quoted here and below in paragraph 59).

4. FCB sought to engage in negotiations relating to this dispute with SVBFG and the Trust on multiple occasions, but neither party responded meaningfully. As a result, FCB brings this adversary proceeding seeking a declaration of its rights as to the SVB IP, which it understood to be an important part of the assets it acquired when it purchased substantially all assets of SVB through the Purchase Agreement.

5. Although this court has never determined the SVB IP ownership dispute, the Trust nonetheless filed a complaint for alleged trademark infringement against FCB in the U.S. District Court for the Northern District of California on March 5, 2025 (Case No. 3:25-cv-02267) ("the California Complaint"). (A copy of pages 1-23 of the California Complaint, without exhibits, is attached as **Exhibit 5**.) The California Complaint includes related claims for alleged trademark dilution, cybersquatting, conversion and misappropriation. As a predicate to asserting infringement of the trademarks and domain names, the allegations require the Northern District of

3

California to first adjudicate the ownership of estate property – that is, whether SVBFG actually owned the SVB IP such that it could assign the SVB IP and any associated causes of action to the Trust. In fact, the California Complaint includes a declaratory judgment claim (Count Ten) that expressly asks that court decide "the lawful ownership of the intellectual property and other assets of the Silicon Valley Bank brand." Ex. 5, Compl. ¶ 108. The California Complaint further requests an order requiring FCB to "convey Plaintiff's property back to Plaintiff." *Id.*, Part VII (Prayer for Relief).

6. However, disputes about the ownership of estate property are the "exclusive jurisdiction" of the district court where the bankruptcy action is commenced, and this court reserved the resolution of these issues in the Plan and Confirmation Order. *See* 28 U.S.C. § 1334(e)(1); Bankr. Dkt., ECF 1379 at 66–67, including paragraph 151 of the Confirmation Order (quoted in paragraphs 3 and 59, above and below).

## THE PARTIES

7. FCB is a company organized under the laws of the State of North Carolina and having its principal place of business in Raleigh, North Carolina.

8. On March 17, 2023 (the "Petition Date"), SVBFG filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and SVBFG is the debtor and debtor in possession in the Chapter 11 Case. SVBFG is a Delaware corporation. Prior to the events leading to the Chapter 11 Case, SVBFG was a bank holding company and the ultimate parent company of SVB, a commercial bank.

9. The Trust is a statutory trust formed under the laws of the State of Delaware pursuant to that certain Amended and Restated Liquidating Trust Agreement of SVB Financial Trust (the "Trust Agreement"), by and among the Liquidating Trust Board (as defined in the Trust

4

Agreement), U.S. Bank Trust National Association as the Delaware resident trustee, and SVBFG as debtor-in-possession, and the Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"). [Bankr. Dkt. 1332] (hereafter "Dkt. __").

## JURISDICTION AND VENUE

10. The United States District Court for the Southern District of New York (the "District Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(e)(1). The District Court has referred civil proceedings arising under, arising in, or related to cases under the Bankruptcy Code to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") pursuant to the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated January 31, 2012 (Preska, C.J.). SVBFG and the Trust are subject to the jurisdiction of this Court in the Chapter 11 Case and this Adversary Proceeding.

11. Venue is proper pursuant to 28 U.S.C. § 1409 (a).

12. Consistent with paragraph 151 of the Bankruptcy Court's Confirmation Order, which states, "Nothing herein shall be deemed consent by FCB to final orders of this Court or to preclude FCB from seeking to withdraw the reference with respect to the issues in dispute about the Intellectual Property," FCB reserves the right to consider withdrawal of the reference to the SDNY district court and therefore at this time does not consent to final orders of the Bankruptcy Court.

13. The relief requested in this Adversary Proceeding requires substantial and material consideration of Titles 12 and 15 of the United States Code, 28 U.S.C. §§ 2201 and 2202, and 11 U.S.C. § 541.

# FACTUAL ALLEGATIONS

## I. The SVB IP

14. Prior to the events leading to SVBFG filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, SVB operated as a commercial bank and used the SVB IP (including the SVB Trademarks) in commerce freely and without oversight, input, or restriction from SVBFG.

15. Records from the United States Patent and Trademark Office (the "PTO") show that the SVB Trademarks are registered to SVBFG.

16. However, on information and belief, SVB made all decisions and took all actions with respect to the SVB Trademarks. For example, the Brand Group (within the Marketing Department) of SVB had sole responsibility for the following: (i) deciding which marks to apply for, (ii) applying for the marks, (iii) paying the PTO registration and periodic maintenance fees for the marks out of SVB's marketing budget, (iv) paying the trademark attorneys out of SVB's marketing budget, and (v) issuing a "SVB reviewer's guide" (telling website and digital and print advertising vendors how to use "the Silicon Valley Bank brand" and the SVB marks). A true and accurate copy of the SVB reviewer's guide is attached as **Exhibit 5**. SVBFG did not approve, oversee, or fund any of these actions.

17. SVBFG's only involvement with the SVB Trademarks, as a matter of corporate practice, was to be administratively listed as the registrant whenever SVB chose, in its judgment, to register a trademark for the bank.

18. On information and belief, SVB freely used the SVB Trademarks without any control by or oversight from SVBFG, was the first and exclusive user of the SVB Trademarks, developed goodwill in and to the trademarks, and was the owner of the SVB Trademarks,

6

including, but not limited to, due to SVBFG's abandonment of the SVB Trademarks. At a minimum, SVB enjoyed a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use to SVB Trademarks.

19. When SVB chose in its judgment to register a domain name for its use, the domain names were administratively registered in the name of SVBFG as a matter of corporate policy.

20. However, SVB operated the web domains and social media accounts freely in its business without any oversight, input, restriction, or involvement from SVBFG, and paid all expenses associated with maintaining those domain names and social media accounts.

21. On information and belief, SVB also was owner of the remaining SVB IP (i.e., all SVB IP other than SVB Trademarks), including, but not limited, due to SVBFG's abandonment thereof, or at minimum, SVB enjoyed a paid-up, perpetual, exclusive (as to banking services and products) and irrevocable license to use the remaining SVB IP (i.e., all SVB IP other than SVB Trademarks).

## II. SVB's Collapse And Transfers Of Assets

22. In early March of 2023, SVB experienced a financial crisis which led to its failure.

23. On or around March 10, 2023, pursuant to its statutory authority under California Financial Code section 592, the California Department of Financial Protection and Innovation (the "DFPI") closed SVB and appointed the FDIC as its receiver ("FDIC-R1"). As receiver for SVB, FDIC-R1 assumed ownership of all SVB assets (including the SVB IP and goodwill) pursuant to Title 12 of the United States Code.

24. On or around March 12, 2023, the FDIC applied to the Office of the Comptroller of the Currency ("OCC") to charter a full-service FDIC-operated bridge bank named Silicon Valley Bridge Bank, National Association ("Silicon Valley Bridge Bank"). On or around March

13, 2023, the OCC approved the FDIC's application to charter Silicon Valley Bridge Bank and authorized the FDIC to commence operation of Silicon Valley Bridge Bank immediately. According to the FDIC, it established Silicon Valley Bridge Bank "to allow time for the FDIC to stabilize the institution and market the franchise."

25. Under 12 U.S.C. § 1823(c), FDIC-R1 exercised its discretion to transfer all SVB assets (including the SVB IP and goodwill) to Silicon Valley Bridge Bank pursuant to the Transfer Agreement (All Deposits), dated as of March 13, 2023 (the "Bridge Bank Agreement"). Specifically, the Bridge Bank Agreement (a) transferred "property of all kinds," including "intangible property" (§2.03(a)), to Silicon Valley Bridge Bank and (b) did not list any intellectual property among the retained assets (§2.03(b)).

26. On or about March 26, 2023, Silicon Valley Bridge Bank was placed into receivership, and the OCC appointed FDIC as receiver for Silicon Valley Bridge Bank and, pursuant to its statutory authority under Title 12 of the United States Code, the FDIC ("FDIC-R2") accepted that appointment.

27. On March 27, 2023, FDIC-R2, FDIC, and FCB entered the Purchase Agreement, under which FCB acquired substantially all assets of Silicon Valley Bridge Bank (including the SVB IP) from FDIC-R2.

28. Specifically, the Purchase Agreement conveyed to FCB "all assets" of Silicon Valley Bridge Bank (§ 3.1), subject only to certain specifically identified exclusions from the acquired assets. Those exclusions did not identify any trademarks (§ 3.5 (a)–(t)). Moreover, while the Purchase Agreement identifies "goodwill" and "other intangibles" as being excluded from the acquired assets, it expressly carves out "intellectual property" (including the SVB IP) from that exclusion (§ 3.5(h)).

29. In addition, the Purchase Agreement states that "[f]or the avoidance of doubt, the term Acquired Assets specifically *includes all assets*, whether or not specifically identified, *that enable the ongoing operation of the bank* and its Private Bank and Wealth Management operating segment consistent with prior operations, except as otherwise excluded in this Agreement" (§ 3.1) (emphasis added).

30. The SVB IP is necessary to "enable the ongoing operation of the bank… consistent with prior operations."

31. Accordingly, any interest of SVBFG or the Trust in the SVB IP consists of nothing more than bare legal title, and all beneficial and equitable rights in the SVB IP belonged to SVB, including, but not limited to, by abandonment, and now belong to FCB as the successor to FDIC-R2 under the Purchase Agreement and Title 12 of the United States Code.

### III. SVBFG's Bankruptcy And Events Relating To The SVB IP

#### a. The Chapter 11 Case

32. On March 17, 2023, SVBFG commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

33. On May 22, 2023, SVBFG filed its Schedule A/B, which identified in Part 10, among other intellectual property, the SVB Trademarks and certain domain names, as SVBFG's assets. [Dkt. 261].

#### b. SVB Securities LLC

34. SVB Securities LLC ("SVB Securities") was an investment bank and a wholly owned subsidiary of SVBFG.

35. On April 27, 2023, SVBFG filed a motion to, among other things, approve bid procedures for the sale of SVB Securities (the "Bid Procedures Motion"). [Dkt. 137]. In response

9

to the Bid Procedures Motion, FCB filed a reservation of rights asserting FCB's belief that certain assets identified by SVBFG in Schedule A/B are property of FCB, including the SVB Trademarks, and stating its intent to object to the sale to the extent that SVBFG proposed to sell such assets free and clear of FCB's interests. [Dkt. 194]. SVBFG represented to FCB that the sale of SVB Securities contemplated by the Bid Procedures Motion will be limited to (a) property owned by non-debtor SVB Securities Holdings LLC and (b) certain trademarks identified in writing by SVBFG to FCB. Based on those representations, FCB consented to the disposition of the identified trademarks and indicated that it would not be "objecting at this time" to the relief sought in the Bid Procedures Motion.

36. On June 18, 2023, SVBFG announced that it had entered into an agreement to sell SVB Securities to a group comprised of certain members of SVB Securities' management.

37. On July 5, 2023, the Bankruptcy Court entered an order approving the sale of SVB Securities. [Dkt. 393].

38. On October 2, 2023, SVBFG announced that the sale of SVB Securities had closed. [Dkt. 583].

### c. SVB Capital

39. SVB Capital was the venture capital and credit investment arm of SVBFG.

40. On May 2, 2024, SVBFG and Pinegrove Sierra Hold Co. LLC ("Pinegrove") entered an Interest Purchase Agreement (the "Pinegrove Agreement"), under which SVBFG agreed to sell its interest in SVB Capital to Pinegrove. [Dkt. 1082]. Under the Pinegrove Agreement, SVBFG agreed to grant Pinegrove "a non-exclusive, royalty-free, fully paid-up, non-transferable, irrevocable, non-sublicensable license" for SVB Capital to use certain trademarks "for a period of six (6) months after the Closing, solely in a substantially similar manner to how

such Trademarks were used in such business as of Closing." [Dkt. 1082, Ex. C, § 4.12(b)]. Upon expiration of the six-month license, Pinegrove will be required to rebrand and cease using the trademarks subject to the license. [Dkt. 1082, Ex. C, § 4.12(a)]. On May 30, 2024, the Bankruptcy Court entered an order approving the SVB Capital sale. [Dkt. 1170]. On information and belief, the sale of SVB Capital has not closed as of the date hereof.

### d. The Plan

41. On August 2, 2024, the Bankruptcy Court entered *Findings of Fact, Conclusions of Law and Order Confirming the Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order"). [Dkt. 1379]. On November 7, 2024, SVBFG filed a notice that all conditions precedent to the Effective Date (as defined in the Plan) of the Plan had either been satisfied or waived in accordance with the Plan and Confirmation Order and, consequently, the Effective Date had occurred. [Dkt. 1563].

42. On the Effective Date, all Liquidating Trust Assets (as defined in the Plan) vested in the Trust, as successor-in-interest to SVBFG, in accordance with the Trust Agreement, the Plan, and the Confirmation Order. The Plan describes 13 types of assets included within the definition of "Liquidating Trust Assets," but the SVB IP is not explicitly identified as a Liquidating Trust Asset. On November 6, 2024, SVBFG filed a schedule of Retained Debtor Assets that also does not identify the SVB IP as a Retained Debtor Asset. [Dkt. 1562]. While not expressly identified as a Liquidating Trust Asset nor a Retained Debtor Asset, to the extent the SVBFG estate had any interest in the SVB IP, it was, at best, potentially vested in the Trust on the Effective Date.

### IV. The Live Controversy As To The SVB IP

43. FCB owns the SVB IP under the Purchase Agreement and Title 12 of the United States Code. Notwithstanding the terms of the Purchase Agreement and the actions taken under

Title 12, the Trust contends that it owns the SVB IP and that FCB has, at most, a revocable license to use the SVB IP.

44. The Trust contends that it owns and controls the SVB Trademarks because they are registered to SVBFG in the PTO.

45. The Trust contends that the FDIC could not have transferred ownership of, or an irrevocable license to use, the SVB Trademarks because SVB did not have such rights to transfer.

46. Contrary to the Trust's contention, SVB owned the SVB IP, including, but not limited to, by SVBFG's abandonment of the SVB IP, and FCB acquired, and assumed ownership of, all SVB IP through the Purchase Agreement.

47. Through the Purchase Agreement, FCB acquired substantially all assets of SVB.

48. The Purchase Agreement did not list any of the SVB IP as excluded from what FCB acquired.

49. FCB acquired the SVB IP through the Purchase Agreement.

50. In addition, the Purchase Agreement is explicit that FCB acquired "all assets . . . that enable the ongoing operation of the bank" (§ 3.1).

51. The SVB IP, which SVB applied for, registered, exclusively and freely used for years, and exclusively controlled, is necessary for FCB to enable the ongoing operation of the bank consistent with its prior operations.

52. SVB owned the SVB IP when it was taken over by the FDIC.

53. Thus, FCB paid for, and acquired, the SVB IP through the Purchase Agreement.

54. Even if FCB did not acquire ownership of all the SVB IP through the Purchase Agreement, FCB acquired, at minimum, a paid-up, perpetual, exclusive (as to banking services

and products), irrevocable license to any SVB IP that it did not acquire through the Purchase Agreement.

55. SVB registered, exclusively and freely used, and exclusively controlled, all SVB IP for years without payment of any royalties to SVBFG. Accordingly, SVB had, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license (explicit or implied) to use all SVB IP.

56. Any license to use the SVB IP that FCB would have purchased through the Purchase Agreement would have the same terms as the license that SVB had to the SVB IP.

57. Accordingly, FCB acquired, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to the SVB IP through the Purchase Agreement.

58. FCB and SVBFG or the Trust have been unable to resolve this dispute as to ownership of the SVB IP, despite repeated attempts at negotiation.

59. This dispute was preserved pursuant to the Bankruptcy Court's Confirmation Order. [Dkt. 1379]. Specifically, paragraph 151 of the Confirmation Order provides (emphasis added):

> Notwithstanding any other provision of the Plan, the Plan Supplement, or this Confirmation Order, the **rights asserted by FCB to the Silicon Valley Bank copyrights, trademarks, internet domain names and websites**, including, but not limited to those identified in Schedule A/B, Part 10, Nos. 60 and 61 (ECF No. 261) (collectively, the "Intellectual Property") shall be **preserved and shall not be discharged, released, waived, converted, enjoined, or otherwise adversely affected by (without limitation) entry of this Confirmation Order, confirmation of the Plan, the Debtor's discharge, or any Plan injunction**; provided that the preservation of rights in this paragraph from the effects of the Plan shall only last through July 31, 2024 (which date may be extended by written agreement of the Debtor (or, after the Effective Date, the Liquidating Trust) and FCB), **after which FCB may file an adversary proceeding in the Chapter 11 Case within ten (10) business days in order to seek to assert any such rights**, and, if FCB files such adversary proceeding, the preservation of rights in this paragraph shall extend

through the entry of a final order in, or consensual resolution of, such adversary proceeding. Nothing herein shall be deemed consent by FCB to final orders of this Court or to preclude FCB from seeking to withdraw the reference with respect to the issues in dispute about the Intellectual Property.

Pursuant to Paragraph 151 of the Confirmation Order, the Debtor and/or the Trust and FCB extended the preservation of rights through March 12, 2025, and FCB has timely filed this Adversary Proceeding within ten (10) business days.

## CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant To 28 U.S.C. § 2201 *Et Seq.*)**

60. FCB re-alleges and incorporates by reference the allegations contained in the prior and subsequent paragraphs of this Complaint as if set forth verbatim herein.

61. At present, an actual controversy exists between FCB and the Trust and/or SVBFG relating to the rights to the SVB IP.

62. FCB is entitled to a Declaratory Judgment declaring, among other things, that:

   a. FCB owns each of the SVB IP assets (including but not limited to the SVB Trademarks and goodwill thereto) described in this Complaint and listed in Exhibits 2-4, and neither SVBFG nor the Trust has any interest in the SVB IP assets;

   b. In the alternative, to the extent there is any SVB IP that FCB does not own, FCB acquired and now owns, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use that SVB IP and has no liability to any person in connection with its past and future use of the SVB IP; and

   c. Neither SVBFG and its bankruptcy estate nor the Trust has any interest in the SVB IP assets, and to the extent they did in any form or title, all such rights were abandoned.

## RESERVATION OF RIGHTS

63. FCB specifically reserves all right to bring any and all other causes of action that it may maintain against SVBFG or the Trust including, without limitation, causes of action arising out of the same transactions as set forth in this Complaint, to the extent discovery in this action or further investigation by FCB reveals the existence of such further causes of action.

## PRAYER FOR RELIEF

WHEREFORE, FCB respectfully requests judgment in FCB's favor as follows:

1. That a declaratory judgment be entered in favor of FCB declaring, among other things, that:

   a. FCB owns each of the SVB IP assets described in this Complaint and listed in Exhibits 2-4, and neither SVBFG and its bankruptcy estate nor the Trust has any interest in the SVB IP assets; and

   b. To the extent there is any SVB IP that FCB does not own, FCB acquired and owns, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use that SVB IP and has no liability to any person in connection with its past and future use of the SVB IP.

2. Ordering SVBFG and the Trust (or their successor or assign) to deliver the SVB IP assets to FCB to the extent not already in FCB's possession and control.

3. Ordering SVBFG and the Trust (or their successor or assign) to timely take all steps necessary, and to timely execute all documents presented by FCB, to correct the formal registrations for the SVB IP, including in the PTO, to assign all such rights to FCB.

4. For other and further relief that this Court deems just and proper.

Respectfully submitted, this is the 21st day of March, 2025.

/s/ Kelsey I. Nix_____
Kelsey I. Nix (NY Bar No. 2191633)
Michael W. Mitchell
C. Michael Anderson
Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Email: knix@smithlaw.com
       mmitchell@smithlaw.com
       manderson@smithlaw.com

Andrew W.J. Tarr
Robinson, Bradshaw & Hinson, P.A.
600 S. Tryon St., Suite 2300
Charlotte, North Carolina 28202
Telephone: (704) 377-2546
Email: atarr@robinsonbradshaw.com

*Counsel for First-Citizens Bank & Trust Company*