**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | <u>**FOR PUBLICATION**</u> |
| SVB FINANCIAL GROUP, | Chapter 11 |
| Reorganized Debtor. | Case No. 23-10367 (MG) |
| | Adv. Case No. 25-01044 (MG) |
| FIRST CITIZENS BANK & TRUST COMPANY, | |
| Plaintiff, | |
| v. | |
| SVB FINANCIAL GROUP and SVB FINANCIAL TRUST, | |
| Defendants. | |

<u>**OPINION AND ORDER GRANTING MOTION TO DISMISS**</u>

*A P P E A R A N C E S :*

SULLIVAN & CROMWELL LLP
*Counsel for SVB Financial Group and SVB Financial Trust*
125 Broad Street
New York, NY 10004-2498
By:    James L. Bromley, Esq.
       Marc De Leeuw, Esq.
       Christian P. Jensen, Esq.

SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, LLP
*Counsel for First-Citizens Bank & Trust Company*
150 Fayetteville Street
Raleigh, North Carolina 27601
By:    Kelsey I. Nix, Esq.
       Michael W. Mitchell, Esq.
       C. Michael Anderson, Esq.

ROBINSON, BRADSHAW & HINSON, P.A.
*Counsel for First-Citizens Bank & Trust Company*
600 S. Tryon Street, Suite 2300
Charlotte, North Carolina 28202
By:    Andrew W.J. Tarr, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is SVB Financial Group and SVB Financial Trust's ("SVBFG"

and "SVBFT," respectively, and together, "Defendants") motion to dismiss ("Motion" or

"MTD," ECF Doc. # 11) the complaint ("Compl.," ECF Doc. # 1) filed by First-Citizens Bank &

Trust Co. ("FCB" or "Plaintiff").  FCB filed a response in support of its Complaint ("Response,"

ECF Doc. # 20) and the Defendants filed a reply ("Reply," ECF Doc. # 23).  For the following

reasons, the motion to dismiss is **GRANTED**.

## I.    BACKGROUND

### A.  Complaint

All the below facts are drawn from the Complaint and are uncontested, unless otherwise

mentioned.

SVBFG was the parent company of Silicon Valley Bank ("SVB") before SVB was

placed in receivership and before SVBFG filed for bankruptcy.  (Compl. ¶ 8.)  Prior to SVBFG's

filing for bankruptcy, SVB operated as a commercial bank and used certain intellectual property

(the "SVB IP," including "SVB Trademarks"), allegedly without oversight, input, or restriction

from SVBFG.  (*Id.* ¶ 14.)  Records from the United States Patent and Trademark Office ("PTO")

show that the SVB Trademarks are registered to SVBFG.  (*Id.* ¶ 15.)  However, FCB alleges on

information and belief that SVB, not SVBFG, "made all decisions and took all actions with

respect to the SVB Trademarks."  (*Id.* ¶ 16.)  FCB claims that "SVBFG's only involvement with

the SVB Trademarks, as a matter of corporate practice, was to be administratively listed as the registrant whenever SVB chose, in its judgment, to register a trademark for the bank." (*Id.* ¶ 17.) In FCB's view, this amounted to SVB enjoying "a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use to SVB Trademarks." (*Id.* ¶ 18.)  As for the rest of the SVB IP, FCB claims that SVB (not SVBFG) was the owner of the rest, "due to SVBFG's abandonment thereof, or at minimum, SVB enjoyed a paid-up, perpetual, exclusive (as to banking services and products) and irrevocable license to use the remaining SVB IP (i.e., all SVB IP other than SVB Trademarks)." (*Id.* ¶ 21.)  (SVBFT contests this, claiming that SVBFG owned all the SVB IP.  (MTD ¶ 6.))

SVB collapsed in early March of 2023.  (Compl. ¶ 22.)  On or around March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed the FDIC as its receiver ("FDIC-R1").  (*Id.* ¶ 23.)  As receiver for SVB, FDIC-R1 assumed ownership of all SVB assets (including the SVB IP) pursuant to Title 12 of the United States Code.  (*Id.*)  The FDIC applied to the Office of the Comptroller of the Currency ("OCC") to charter a full-service FDIC-operated bridge bank ("Silicon Valley Bridge Bank").  (*Id.* ¶ 24.)  The OCC approved the FDIC's application to charter the Bridge Bank.  (*Id.*)  FDIC-R1 then transferred all SVB assets (including, according to FCB, the SVB IP) to Silicon Valley Bridge Bank pursuant to a transfer agreement (the "Bridge Bank Agreement").  (*Id.* ¶ 25.)  Specifically, the Bridge Bank Agreement (a) transferred "property of all kinds," including "intangible property," to Silicon Valley Bridge Bank and (b) did not list any intellectual property among the retained assets.  (*Id.*)

On or about March 26, 2023, Silicon Valley Bridge Bank was placed into receivership.  (*Id.* ¶ 26.)  The FDIC (specifically, FDIC-R2) became the receiver for the Bridge Bank.  (*Id.*)

On March 27, 2023, FDIC-R2, FDIC, and FCB entered into a Purchase Agreement, pursuant to which FCB acquired substantially all assets of Silicon Valley Bridge Bank (including, according to FCB, the SVB IP) from FDIC-R2.  (*Id.* ¶ 27.)  Specifically, the Purchase Agreement conveyed to FCB "all assets" of Silicon Valley Bridge Bank, subject only to certain specifically identified exclusions.  (*Id.* ¶ 28.)  Those exclusions did not identify any trademarks. (*Id.*)  Moreover, while the Purchase Agreement identifies "goodwill" and "other intangibles" as being excluded from the acquired assets, it expressly carves out "intellectual property" from that exclusion.  (*Id.*)  The Purchase Agreement also provides "[f]or the avoidance of doubt, the term Acquired Assets specifically includes all assets, whether or not specifically identified, that enable the ongoing operation of the bank and its Private Bank and Wealth Management operating segment consistent with prior operations, except as otherwise excluded in this Agreement."  (*Id.* ¶ 29.)  FCB claims that the SVB IP is necessary to enable the ongoing operation of the bank.  (*Id.* ¶ 30.)  It also alleges that "any interest of SVBFG or the Trust in the SVB IP consists of nothing more than bare legal title, and all beneficial and equitable rights in the SVB IP belonged to SVB, including, but not limited to, by abandonment, and now belong to FCB as the successor to FDIC-R2 under the Purchase Agreement and Title 12 of the United States Code."  (*Id.* ¶ 31.)  SVBFT contests this characterization, arguing that the Purchase Agreement did not transfer to FCB any SVB IP because the SVB IP never belonged to SVB but instead always belonged to SVBFG; as receiver, FDIC-R1 only succeeded to the rights, titles, powers, and privileges of SVB, *not* SVBFG, and thus could not sell SVBFG's assets.  (MTD ¶ 10.)

When it filed for bankruptcy, SVBFG listed in its schedules, among other intellectual property, the SVB Trademarks and certain domain names as its assets.  (Compl. ¶ 33.)  SVBFG has purported to sell certain SVB IP to other entities.  (*Id.* ¶ 34–40.)

This Court entered a confirmation order confirming SVBFG's chapter 11 plan ("Plan") on August 2, 2024.  (*Id.* ¶ 41; Confirmation Order and Plan at ECF Doc. # 1379, case no. 23-10367.)  The Plan transferred all "Liquidating Trust Assets" to SVB Financial Trust (SVBFT), the successor-in-interest to the debtor SVBFG.  (Compl. ¶ 42.)  The Plan describes 13 types of assets included within the definition of "Liquidating Trust Assets"; the SVB IP is not explicitly identified as a Liquidating Trust Asset.  (*Id.*)  On November 6, 2024, SVBFG filed a schedule of Retained Debtor Assets that also does not identify the SVB IP as a Retained Debtor Asset. (ECF Doc. # 1562.)  FCB's position is that, to the extent the SVBFG estate had any interest in the SVB IP, "it was, at best, potentially vested in the Trust on the Effective Date."  (Compl. ¶ 42.)

The Confirmation Order contains the following provision:

> Notwithstanding any other provision of the Plan, the Plan Supplement, or this Confirmation Order, <u>the rights asserted by FCB to the Silicon Valley Bank copyrights, trademarks, internet domain names and websites</u>, including, but not limited to those identified in Schedule A/B, Part 10, Nos. 60 and 61 (ECF No. 261) (collectively, the "Intellectual Property") <u>shall be preserved and shall not be discharged, released, waived, converted, enjoined, or otherwise adversely affected by (without limitation) entry of this Confirmation Order, confirmation of the Plan,</u> the Debtor's discharge, or any Plan injunction; provided that <u>the preservation of rights in this paragraph from the effects of the Plan shall only last through July 31, 2024</u> (which date may be extended by written agreement of the Debtor (or, after the Effective Date, the Liquidating Trust) and FCB), <u>after which FCB may file an adversary proceeding in the Chapter 11 Case within ten (10) business days in order to seek to assert any such rights, and, if FCB files such adversary proceeding, the preservation of rights in this paragraph shall extend through the entry of a final order in, or consensual resolution of, such adversary proceeding</u>. Nothing herein shall be deemed consent by FCB to final orders of this Court or to preclude FCB from seeking to withdraw the reference with respect to the issues in dispute about the Intellectual Property.

(Confirmation Order ¶ 151 (emphasis added).)  The Plan contains a retention-of-jurisdiction provision, which reads, in relevant part:

> Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain its existing jurisdiction over all matters arising in or out of, or related to, the Chapter 11 Case or the Plan pursuant

to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to: . . . (xxii.) Adjudicate all other matters over which the Bankruptcy Court has jurisdiction; (xxiii.) Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters relating to the Retained Causes of Action . . .

(Plan Art. 15.)  The Plan defines "Retained Causes of Action" as "all of the Debtor's claims or

Causes of Action and Defenses, other than those settled, released or exculpated under this Plan;

*provided*, that, notwithstanding anything herein to the contrary, NewCo or the Liquidating Trust

shall retain the Debtor's right to commence and pursue . . . any Claims or Causes of Action and

Defenses the Debtor may have against First Citizens Bank & Trust Company." (*Id.* Art.

2.1.172.)  According to FCB, this IP dispute "is one assigned to the Trust under the confirmed

Plan." (Response at 16.)  The Plan also contains a provision concerning the preservation of

Retained Causes of Action:

> Except as provided in the Plan, the Confirmation Order, or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trust or NewCo, as applicable, will retain and may enforce any Retained Causes of Action that the Estate may hold against any Entity. The Liquidating Trust or NewCo, as applicable, may pursue any such Retained Causes of Action in accordance with the Plan and the Liquidating Trust Agreement, as applicable. The Debtor's inclusion or failure to include or describe with sufficient specificity any Retained Causes of Action herein or in the Plan Supplement shall not be deemed an admission, denial or waiver of any Retained Causes of Action that the Debtor or the Estate may hold. The Debtor intends to preserve all Retained Causes of Action. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to the Retained Causes of Action upon or after entry of the Confirmation Order on the Effective Date of the Plan based on the Plan or the Confirmation Order, including any argument of waiver on account of the failure to include or describe with sufficient specificity any Retained Causes of Action herein or in the Plan Supplement.

(Plan Art. 7.13 (emphasis added).)

FCB now asserts that it owns the SVB IP under the Purchase Agreement it executed with

the FDIC.  (Compl. ¶ 43.)  In its Complaint, FCB seeks a declaration that it owns the SVB IP.

6

(*Id.* ¶ 1.)  To the extent that the Court determines that there is any SVB IP that FCB does not currently own, FCB seeks a declaration that it acquired, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use the SVB IP.  (*Id.* ¶ 2.)  FCB alleges that SVBFT contends that it retains ownership of the SVB IP, that SVBFG allowed SVB to use the SVB IP without a written license, and that the SVB IP was not included in the SVB assets that FCB acquired from the FDIC because neither SVB nor the FDIC had rights to the SVB IP for FCB to acquire.  (*Id.* ¶ 3.)  SVBFT and FCB expressly preserved the issue of ownership of the SVB IP until after SVB's plan confirmation.  (*Id.*; *see also id.* ¶ 59.)

On March 5, 2025—20 days before FCB filed this adversary proceeding—SVBFT sued FCB for trademark infringement in the U.S. District Court for the Northern District of California. (*Id.* ¶ 5.)  SVBFT asserts four federal law causes of action in the California litigation, for trademark infringement, trademark dilution, false designation of origin, and cybersquatting; it also alleges causes of action for trademark infringement and dilution under California law, violation of California's Unfair Competition Law, and common law conversion and misappropriation.  (MTD ¶ 27.)  By FCB's own admission, SVBFT's allegations in the California litigation require the Northern District of California ("California Court") to first adjudicate the ownership of estate property—i.e., whether SVBFG actually owned the SVB IP such that it could assign the SVB IP and any associated causes of action to SVBFT.  (Compl. ¶ 5.)  The California complaint includes a declaratory judgment claim that expressly asks that court decide "the lawful ownership of the intellectual property and other assets of the Silicon Valley Bank brand."  (Compl. Ex. 5.)

On March 21, 2025, FCB filed a motion to transfer the California action to the U.S. District Court for the Southern District of New York or, in the alternative, to stay the case.

(MTD ¶ 13.)  During oral argument on the Motion to Dismiss, the parties indicated that the California court is awaiting this Court's decision before deciding the motion to transfer.

FCB commenced this adversary proceeding against SVBFT and SVBFG on March 25, 2025.  FCB maintains that this Court is the only one which can resolve the dispute about ownership of estate property.  (Compl. ¶ 6.)  It premises this Court's jurisdiction on paragraph 151 of the Court's confirmation order, quoted in full above.  (*Id.* ¶ 51.)  However, FCB also reserves the right to consider withdrawal of the reference of this case to the District Court for the Southern District of New York and "therefore at this time does not consent to final orders of the Bankruptcy Court."  (*Id.* ¶ 12)

FCB brings a single count under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, seeking a judgment that: (1) "FCB owns each of the SVB IP assets (including but not limited to the SVB Trademarks and goodwill thereto) described in this Complaint and listed in Exhibits 2-4, and neither SVBFG nor the Trust has any interest in the SVB IP assets;" (2) "[i]n the alternative, to the extent there is any SVB IP that FCB does not own, FCB acquired and now owns, at minimum, a paid-up, perpetual, exclusive (as to banking services and products), and irrevocable license to use that SVB IP and has no liability to any person in connection with its past and future use of the SVB IP; and" (3) "[n]either SVBFG and its bankruptcy estate nor the Trust has any interest in the SVB IP assets, and to the extent they did in any form or title, all such rights were abandoned."  (*Id.* ¶ 62.)  In its Prayer for Relief, FCB also requests that this Court order SVBFG and the Trust "to deliver the SVB IP assets to FCB to the extent not already in FCB's possession and control," and "to timely take all steps necessary, and to timely execute all documents presented by FCB, to correct the formal registrations for the SVB IP, including in the PTO, to assign all such rights to FCB."  (*Id.* at 15.)

### B. Motion to Dismiss

From SVBFT's perspective, FCB's adversary complaint is a tactic to delay the California

lawsuit SVBFT brought against FCB for trademark infringement.  (MTD ¶ 1.)  SVBFT points

out that FCB did not consent to this Court's issuing a final order and reserves the right to

withdraw the reference, so the "exact same issues may be raised before three different courts—

this Court, the court in the California Action, and the district court for the Southern District of

New York—when all the relevant issues can and should be fully resolved in the already-pending

California Action."  (*Id.* ¶ 2.)  This risks inconsistent judgments.[1]  (*Id.*)

SVBFT argues that this Court does not have exclusive jurisdiction over the dispute and

thus can exercise its discretion over whether to hear this case.  SVBFT requests that this Court

exercise its discretion to decline to adjudicate this matter on two grounds: (1) pursuant to 28

U.S.C. § 1334(c)(1), which provides that a court should "abstain[] from hearing a particular

proceeding arising under title 11 or arising in or related to a case under title 11" when doing so is

in the "interest of justice"; and (2) under the Declaratory Judgment Act, under which courts have

"broad discretion" to "refuse to exercise jurisdiction over a declaratory action that they would

otherwise be empowered to hear."  (*Id.* ¶ 16, 17.)  SVBFT also argues that it, in part, seeks relief

in the California action (e.g., damages from FCB for unauthorized use of SVBFT's IP rights) that

the bankruptcy court does not have jurisdiction to award.

FCB initiated this action in this Court on the basis of paragraph 151 of the Confirmation

Order, which preserves FCB's ability to assert and protect its purported rights in the SVB IP.

But according to SVBFT, that paragraph merely preserves FCB's rights, but does not *require this*

Court to adjudicate any IP dispute.  (*Id.* ¶ 19.)  Given that this Court's jurisdiction shrank after

---

[1]    During the argument of the Motion to Dismiss, FCB's counsel stated on the record that it waived the right
to seek to withdraw the reference.

the effective date of reorganization plan (*id.* ¶ 20), and that neither the Confirmation Order nor the Plan grants this Court "exclusive jurisdiction over all possible claims related to the underlying bankruptcy proceedings or assets that formerly constituted property of the Debtor's estate," SVBFT argues that this Court does not have exclusive jurisdiction over this dispute (*id.* ¶ 21). During argument, SVBFT's counsel explained that the two courts have concurrent jurisdiction over at least part of the issues in the two separate cases.

In response to FCB's suggestion that 28 U.S.C. § 1334(e)(1) gives this Court exclusive jurisdiction over this dispute because it concerns "ownership of estate property," SVBFT responds that (1) SVBFG's estate no longer exists, since the Plan became effective, so the remains no property over which this Court can exercise exclusive jurisdiction; (2) section 1334(e)(1) is read narrowly to limit bankruptcy courts' exclusive jurisdiction strictly to *in rem* matters involving property of the debtor/estate and is not a restriction on nationwide jurisdiction over claims for violations of the Code, other federal statutes, or other remedies—section 1334(e)(1) does not extend to claims by the debtor against a third party (or claims by a third party against the debtor), because those are *in personam* actions. (*Id.* ¶¶ 22–23.) The California litigation concerns *in personam* claims against FCB and so are not covered by section 1334(e)(1), so this Court has non-exclusive jurisdiction over such claims—and the same goes for FCB's claims against SVBFT. (*Id.* ¶ 24.)

SVBFT also argues that this Court should abstain from judgment under 28 U.S.C. § 1334. First, SVBFT argues that resolving this case would have no effect on the efficient administration of the (now-nonexistent) estate, in part because the estate no longer exists, in part because determining the present adversary proceeding will not resolve many of the claims in the California action, and in part because allowing the adversary proceeding to continue would result

in piecemeal litigation and delay, all of which cut in favor of abstention.  (*Id.* ¶ 26–30.)  Second,

federal and state law issues will predominate over bankruptcy ones in this adversary proceeding.

(*Id.* ¶ 31.)  Third, the California action is already pending, and while this adversary proceeding

will not fully resolve the California litigation, the issues do overlap, and permitting this

adversary proceeding to continue would risk duplication of efforts and inconsistent judgments.

(*Id.* ¶ 33.)  Fourth, the dispute over the SVB IP is non-core and FCB's requested relief has little

to do with the main bankruptcy proceeding.  (*Id.* ¶ 36–37.)  Fifth, FCB's requested relief is

unnecessary (because duplicative) and hence an undue burden on this Court's docket (*id.* ¶ 38),

and it is also evidence of forum-shopping (*id.* ¶ 39–41.)  Finally, SVBFT has requested a jury

trial in California, which this Court cannot provide.  (*Id.* ¶ 42.)

SVBFT also argues for abstention under the Declaratory Judgment Act, for many of the

same reasons: it argues that this adversary proceeding will not serve a useful purpose as it is

duplicative of the California action (*id.* ¶¶ 45–47), that FCB's request for relief (including a

determination of past liability) is inappropriately broad for a declaratory judgment (*id.* ¶¶ 48–50),

that this adversary proceeding will not fully resolve the California litigation (*id.* ¶ 51), that it

poses a risk of friction with another court (*id.* ¶ 52), that hearing the case is judicially inefficient

(*id.* ¶ 53), and that FCB is engaging in a "race to *res judicata*" (*id.* ¶ 54).

### C.  Response

FCB accuses SVBFT of "[d]isavowing its predecessor's [SVBFG] original forum

selection, repudiating the parties' [purported] agreement" to address IP disputes via an adversary

proceeding in this Court, "ignoring the Confirmation Order" which purportedly embodies that

agreement, "and trying to circumvent this District's exclusive jurisdiction to decide ownership of

state property."  (Response at 2.)  FCB explains that in the lead-up to plan confirmation, it raised

informal confirmation objections and served discovery requests concerning IP ownership, but to
facilitate confirmation, FCB and SVBFT agreed to modify the plan to carve out the IP dispute
from the discharge and release provisions of the plan and confirmation order.  (*Id.* at 4–5.)  The
confirmation order permitted (but did not require) FCB to "file an adversary proceeding in the
Chapter 11 Case within ten (10) business days in order to seek to assert [ownership] rights," and
provided that the Court "shall retain its existing jurisdiction" to resolve such a dispute.  (*Id.* at 5.)
FCB explains that the 10-day window to file would be triggered by an end of negotiations.  FCB
claims that it engaged with SVBFT to try to resolve the IP dispute, but SVBFT ended those
negotiations by suing in California, so FCB filed this adversary proceeding in accordance with
the procedure set out in the Confirmation Order.  (*Id.* at 6.)

FCB attaches some emails between the two parties' counsel concerning FCB's IP-related
objection to the SVBFG plan.  (*Id.* Exs. C–E.)  An email from FCB's counsel suggests that, to
the extent the parties cannot settle their dispute, "debtor/liquidating trust and First-Citizens could
litigate the intellectual property matter post-confirmation (and, we're open to setting a reasonable
deadline by which either party could file papers with the court to commence litigation of that
dispute if there is no commercial resolution in place)."  (*Id.* Ex. C.)  Subsequent emails expressly
stated that First-Citizens planned to file an adversary proceeding if settlement negotiations failed
by a certain time.  (*Id.* Ex. D at 3 ("If the parties are unable to resolve the matter by July 31,
First-Citizens will file an adversary proceeding on the IP issues."; *id.* at 2 ("I don't think we
would have the court <u>order</u> that FCB file an AP.") (emphasis in original); *id.* at 1 ("I agree that
the order does not need to expressly mandate FCB file an AP by July 31, but the order should not
prejudice FCB's rights to the IP if it does file an AP by July 31.  In other words, if FCB timely

files an AP, the parties' rights would need to be determined in the AP and not prejudiced by the confirmation of the plan.").)

FCB first argues that SVBFT is judicially estopped from arguing abstention because SVBFT (and its predecessor SVBFG) is "deliberately changing positions according to the exigencies of the moment," prejudicing FCB. (Response at 8.) FCB argues that SVBFT and its predecessor took two clearly inconsistent positions: first, that in exchange for FCB withdrawing its plan discovery and objections, SVBFG "factually represented and agreed" that the Confirmation Order would preserve both sides' rights with respect to IP issues, and that if FCB timely filed an AP, the parties' rights would be determined by that adversary proceeding. (*Id.* at 8–9.) Now, per FCB, SVBFT is arguing that confirmation *does* adversely affect FCB's rights and this Court's exclusive jurisdiction to determine the property of the estate. (*Id.*at 9.)

Next, FCB argues that this Court does have exclusive jurisdiction over this dispute since it concerns property of the estate—the IP which SVBFG claimed was in its estate. (*Id.* at 10.) FCB argues that this Court retained post-confirmation jurisdiction, relying entirely on the language in the Plan and confirmation order. (*Id.* at 11.) FCB claims that, when the confirmation order and plan were entered, this Court had exclusive jurisdiction over the IP ownership dispute, and "the Plan and Confirmation Order carry that exclusive jurisdiction forward, irrespective of whether the estate still exists." (*Id.* at 11–12.) FCB insists that since this adversary proceeding "centers on property of the debtor's estate," it implicates this Court's *in rem* authority and is hence within this Court's exclusive jurisdiction, contrary to SVBFT's assertion that this is an *in personam* proceeding. (*Id.*)

FCB then argues that SVBFT has not carried its burden with regards to permissive abstention. It claims that adjudicating IP ownership will impact the administration of the estate

because a judgment in favor of SVBFT would inure to its benefit and hence to SVBFG's

creditors. (*Id.* at 14–16.)  It also argues that this adversary would have preclusive effect in

California and that, "because ownership is either a required element or a dispositive defense to

the infringement allegations, that preclusive effect would not delay or hinder the California

action—but instead would significantly advance and likely terminate it." (*Id.* at 16–17.)

Because FCB argues that the dispute concerns property of the estate, it is core and presents

significant bankruptcy issues. (*Id.* at 18–19.)  FCB accuses SVBFT of gamesmanship because of

its decision to sue in California and not in New York. (*Id.* at 19–20.)  Since the California action

"has barely begun" and is effectively stayed because of the motion to transfer that action to New

York, there is no risk of discordant judgments. (*Id.* at 21.)  Even if the California case is not

transferred, a ruling here would have preclusive effect in California and hence would obviate the

risk of inconsistent judgments. (*Id.*)  If transfer is denied, FCB has moved in the alternative to

stay the California case to avoid duplication. (*Id.*)  FCB argues that the Southern District of New

York is the more convenient forum, as compared to California. (*Id.* at 22.)  FCB also argues that

litigating ownership would not burden this Court since the parties previously agreed to litigate

ownership here and the Court preserved the issue and retained jurisdiction over it. (*Id.* at 22.)

SVBFT's request for a jury trial also does not tip the scales towards abstention. (*Id.* at 23.)

FCB then argues in favor of this Court's exercising jurisdiction under the DJA, claiming

that SVBFT is engaged in "procedural fencing," not FCB. (*Id.* at 24–25).  It argues that

declaring ownership will likely resolve the parties' dispute, and that while the California might

resolve the ownership dispute, it is not duplicative of this AP, as FCB seeks broader relief here—

"a declaration that it owns or has the right to use the IP Assets to the exclusion of the Trust,

SVBFG, and the estate, and an order directing Defendants to re-register, assign, and deliver the

IP Assets to FCB"—which the California court cannot grant because SVBFG and the estate are not parties to that dispute, but that this Court can grant, given its exclusive *in rem* jurisdiction. (*Id.* at 25–26.)  FCB maintains that its requested relief is not overbroad and that it is instead appropriately tailored to settle FCB's right to own and use the IP, so the DJA permits exercise of jurisdiction.  (*Id.* at 26.)  Even if this adversary proceeding overlaps entirely with the California action, FCB claims that SVBFT is "solely motivated by forum shopping" and that dismissing the AP would "reward . . . gamesmanship."  (*Id.* at 26–27.)  Finally, FCB argues that litigating ownership here is judicially efficient because "parties and the Court are familiar with each other and with the ownership question, having dealt with it here for two years, and resolving that core bankruptcy matter will meaningfully impact administration of the Plan" without causing "undue friction with the California court."  (*Id.* at 27.)

### D.  Reply

To refute FCB's argument that SVBFT is judicially estopped from arguing abstention, SVBFT points to the emails between the parties' counsel regarding the implication of the proposed plan on their ongoing IP dispute which FCB attached to its Response.  (Reply ¶ 5.) SVBFT claims that these emails show, and the language of the Confirmation Order makes clear, that the dispute being discussed at the time was a potential objection to the *Plan*—and had nothing to do with choosing a venue for the adjudication of the present dispute.  (*Id.*)  SVBFT explains that the Plan and Confirmation Order, and the preceding negotiations, established that plan confirmation "would not alter either party's rights to litigate the intellectual property dispute (*i.e.*, the Plan would not act to expunge and release any claim by FCB to the SVB IP before expiration of the agreed deadline) if it was not resolved consensually."  (*Id.* ¶ 7.)  However, nothing states that FCB or SVBFT is *required to* assert its rights in an adversary proceeding

before this Court, and per SVBFT, the "Confirmation Order in no way dictated where the SVB

IP dispute must be litigated." (*Id.* ¶ 8.)

Regardless of the parties' agreement, SVBFT argues that judicial estoppel is simply

inapplicable, because SVBFT has never taken an inconsistent position *with a court*, nor could

FCB point to such an inconsistency. (*Id.* ¶ 9–10.) Nor has this Court "accept[ed]" any earlier

inconsistent position from SVBFT or SVBFG, as the Court never considered the question of

whether it has exclusive jurisdiction over this action. (*Id.* ¶ 11.) Since SVBFT and SVBFG have

never asserted an inconsistent position, they cannot derive an unfair advantage from their present

arguments. (*Id.* ¶ 12.)

SVBFT presses its argument that the dispute is *in personam*, pointing to the broad

remedy FCB is requesting, which includes a declaration of non-liability and mandatory

injunctive relief against SVBFT. (*Id.* ¶ 14–16.) And "even if this Court previously had

exclusive jurisdiction to determine whether the SVP IP constituted property of the estate, any

such jurisdiction dissipated upon the effectiveness of the Plan," at which time the estate's assets

vested in SVBFT and the estate ceased to exist—so the estate no longer possesses property over

which this Court may exercise exclusive *in rem* jurisdiction. (*Id.* ¶ 17.) Nor does the Plan's

retention-of-jurisdiction provision change this result—in providing that this Court retains "its

existing jurisdiction over all matters arising in or out of, or related to, the Chapter 11 Case or the

Plan pursuant to section 105(a) and 1142 of the Bankruptcy Code," the Plan only states that this

Court retains the same original, non-exclusive jurisdiction over civil proceedings (i.e., "matters")

that it had prior to Plan effectiveness, *not* that this Court has *exclusive* jurisdiction over all

disputes that would have affected the property of the estate before confirmation (as plan

confirmation destroyed the estate). (*Id.* ¶ 19.) The retention-of-jurisdiction language just

16

preserves the Court's authority to resolve disputes concerning the bankruptcy case or Plan if

necessary and appropriate.  (*Id.*)

SVBFT reiterates its arguments concerning permissive abstention and abstention under

the DJA.  (*Id.* at 11–16.)

## II.    LEGAL STANDARD

### A.  Jurisdiction

28 U.S.C. § 1334(e) reads as follows:

> The district court in which a case under title 11 is commenced or is pending shall
> have exclusive jurisdiction—(1) of all the property, wherever located, of the debtor
> as of the commencement of such case, and of property of the estate; and (2) over
> all claims or causes of action that involve construction of section 327 of title 11,
> United States Code, or rules relating to disclosure requirements under section 327.

"Subsection (a) of [28 U.S.C.] section 1334 provides that the district courts have

original and *exclusive* jurisdiction over *cases* under title 11 (not at issue here), and section

1334(e) gives district courts *exclusive* jurisdiction over property of debtors' bankruptcy estates."

*In re Ames Dep't Stores, Inc.*, 542 B.R. 121, 134 (Bankr. S.D.N.Y. 2015) (emphasis in original).

Notably, section 1334(e) by itself does not "'invest [federal] courts with jurisdiction to conduct

civil proceedings.'"  *In re JJ Arch LLC.*, No. 24-10381 (JPM), 2024 WL 2933427 (Bankr.

S.D.N.Y. June 10, 2024), at *7 n.11 (quoting *Valley Historic Ltd. P'ship v. Bank of New York*,

486 F.3d 831, 837 (4th Cir. 2007)).  Instead, "[section] 1334(e) must be read narrowly to limit

the 'home court' exclusive jurisdiction . . . strictly to *in rem* matters involving property of the

debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for

violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other

remedies."  *In re Ajasa*, 627 B.R. 6, 18–19 (Bankr. E.D.N.Y. 2021) (internal citation and

quotation marks omitted).  A home court's exclusive jurisdictional reach under section 1334(e)

therefore does not automatically extend to *in personam* claims that exist outside the bankruptcy

court, such as "claims against the debtor, or claims by the debtor against a third party." *In re JJ Arch LLC.*, 2024 WL 2933427, at \*7 n.11 (rejecting debtor's argument that because a state court proceeding would determine the nature and control over one of the debtor's most valuable assets, the bankruptcy court had exclusive jurisdiction under Section 1334(e)); *see also Valley Hist. Ltd. P'ship*, 486 F.3d at 837 (holding that Section 1334(b) "invests district courts with original but not exclusive jurisdiction over civil proceedings. In contrast, § 1334(e) is a broad grant of exclusive jurisdiction over a debtor's property; it does not invest district courts with jurisdiction to conduct civil proceedings.").

By contrast, "§ 1334(b) grants courts sitting in bankruptcy with 'original but not exclusive' jurisdiction over 'civil proceedings arising under title 11, or arising in or related to cases under title 11'—which include, in addition to contested matters in cases, adversary proceedings like this one." *In re Ames Dep't Stores, Inc.*, 542 B.R. at 135; *see also* 11 U.S.C. § 1334(b) ("Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."). Bankruptcy court jurisdiction is derivative of district court jurisdiction, with cases and proceedings referred to the bankruptcy courts under each district's order of reference. 28 U.S.C. § 157(a).

"A second provision of the Judicial Code, 28 U.S.C. § 157, addresses the extent to which bankruptcy judges . . . are empowered to 'hear and determine'—i.e., to issue final judgments and orders in—proceedings that fall under the subject matter jurisdiction of the district and bankruptcy courts . . . . 28 U.S.C. § 157, addressing bankruptcy judges' statutory authority, grants authority to bankruptcy judges to hear and determine matters in 'cases under title 11' . . .

and in '*core*' proceedings arising under title 11 or arising in a case under title 11." *In re Ames*, 542 B.R. at 137 (emphasis added). If a matter brought before the bankruptcy court is *non-core*, "the parties may consent to entry of a final order or judgment by a bankruptcy judge"—and absent consent, a bankruptcy court may *not* enter a final order on the matter. *Executive Sounding Board Assocs. Inc. v. Advanced Machine & Engineering Co. (In re Oldco M Corp.)*, 484 B.R. 598, 605 (Bankr. S.D.N.Y. 2012) (internal citation omitted); 28 U.S.C. § 157(c)(2).

The questions whether a matter is *core* and whether the bankruptcy court has *exclusive jurisdiction* over it are distinct. *See In re Ames*, 546 B.R. at 138–46 (assessing the two questions separately).[2] It is theoretically possible for a bankruptcy court to have exclusive jurisdiction over a non-core matter in which parties would have to consent to the bankruptcy court's entry of a final judgment, because 28 U.S.C. § 1334(e) does not actually grant *bankruptcy courts* exclusive jurisdiction—it grants exclusive jurisdiction to *district courts*. So, it is in theory possible for a claim to fall within the bankruptcy court's (read: district court's) exclusive jurisdiction pursuant to section 1334(e), and for one of the parties to still insist that the *district* court, not the bankruptcy court, is the one to issue the final order. Therefore, there is nothing necessarily inherently contradictory in FCB's insistence that this Court has exclusive jurisdiction over this matter, and its initial refusal to consent to entry of a final order by this Court

However, that distinction is academic, as section 1334(e) no longer applies. "[U]nless the plan says something different, confirmation vests the property of the estate in the reorganized debtor. 11 U.S.C. § 1141(b). The estate comes to an end, and ceases to exist . . . . Accordingly, the outcome of a post-confirmation proceeding *cannot affect the estate*." *In re Gen. Media, Inc.*,

---

[2]    Needless to say, matters can be *core* but fall *outside of* the district court's exclusive jurisdiction. *See* 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.").

335 B.R. 66, 74 (Bankr. S.D.N.Y. 2005) (internal citations omitted, emphasis added); *see also*

*Guccione v. Bell*, No. 06 CIV. 492 (SHS), 2006 WL 2032641, at *5 (S.D.N.Y. July 20, 2006)

(noting that after confirmation, the bankruptcy estate ceases to exist); *Valley Historic Ltd. P'ship*,

486 F.3d at 837 ("[28 U.S.C.] § 1334(e) . . . does not invest district courts with jurisdiction to

conduct civil proceedings.  Instead, in the context of a Chapter 11 proceeding in connection with

other provisions of Title 11, it creates exclusive jurisdiction over 'property' for a limited period

of time—*until confirmation* and the property vests in the reorganized debtor . . . .  [N]either the

Plan nor the order confirming the Plan provided that the breach of contract claim or the tortious

interference claim would remain property of the bankruptcy estate following the confirmation of

the Plan.  Consequently, upon Plan confirmation, the claims vested in the reorganized Debtor

and could no longer be considered 'property of the estate' under § 1334(e).") (emphasis added).

The Plan was entered and, pursuant to the Confirmation Order and the Plan, the property of

SVBFG's estate vested in SVBFT, including the Retained Causes of Action (*see supra*).  The

Plan did not preserve any relevant assets for SVBFG.  SVBFG's Plan became effective on

November 7, 2024.  (ECF Doc. # 1563, case no. 23-10367.)  Therefore, section 1334(e) does not

apply, as there is no more estate to administer.[3]

---

[3]      The non-binding summary order FCB cites to the contrary, *In re DPH Holdings Corp.*, 448 F. App'x 134
(2d Cir. 2011), is not on point.  There, the Second Circuit found that a dispute concerning insurance contracts, which
dispute arose post-confirmation, implicated "the bankruptcy court's traditional *in rem* authority . . . as well as
'proceedings necessary to effectuate the *in rem* jurisdiction of bankruptcy courts'" because the "contracts, which
include potential liabilities and responsibilities for [the debtor], are part of [the debtor's] estate," the "interpretation
and reformation of those contracts involve adjudication of the estate: the *res*," and "the adversary proceeding could
have substantial ramifications for the size of the estate, the allowance and disallowance of claims against it, and the
priority of creditors, all of which implicates the *in rem* jurisdiction of the bankruptcy court."  *Id.* at 136–38.  While
this order implicitly held that the debtor's estate survived plan confirmation, it did *not* state that the dispute before it
was necessarily within the "exclusive jurisdiction" of the district court pursuant to section 1334(e)—it merely found
that the dispute was either "an *in rem* proceeding" *or* was "otherwise necessary to effectuate the *in rem* jurisdiction
of the Bankruptcy Court," and therefore found that State defendants' sovereign immunity defense did not apply
because the States waived sovereign immunity in "proceedings implicating the bankruptcy court's traditional *in rem*
authority."  *Id.* at 137.  No court has cited *In re DPH* for the proposition that FCB relies on it for—that a court's
*exclusive*, *in rem* jurisdiction extends beyond plan confirmation.  (*See* Response at 11–12.)

The determination of a bankruptcy court's jurisdiction post-plan confirmation involves its own set of inquiries, as after plan confirmation, it is generally understood that "the bankruptcy court's jurisdiction shrinks." *In re Gen. Media, Inc*., 335 B.R. at 73; *see also North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp*., 143 F.2d 938, 940 (2d Cir. 1944) ("Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and hamper its activities and throw doubt upon its responsibility.") (cited by *In re Gen. Media, Inc*., 335 B.R. at 73). To establish post-confirmation jurisdiction in bankruptcy court, a party "invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements." *In re Gen. Media, Inc.*, 335 B.R. at 73. First, the matter requires a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan." *Id*. (internal citation omitted). Second, the chapter 11 plan "must provide for the retention of jurisdiction over the dispute." *Id*. at 73–74; *see also Hosp. and Univ. Prop. Damage Claimants v. Johns Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993); *In re Old Carco LLC*, 636 B.R. 347, 355 (Bankr. S.D.N.Y. 2022).

**B. First-Filed Case Doctrine**

Generally, courts give significant deference to a plaintiff's choice of forum. *Iragorri v. United Techs. Corp*., 274 F.3d 65, 70 (2d Cir. 2001). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id*. A corollary of the deference given to a plaintiff's choice of forum arises when two substantially similar lawsuits

---

The other cases FCB cites—*In re Ames Dep't Stores, Inc.*, 542 B.R. 121 (Bankr. S.D.N.Y. 2015), *In re Brown*, 734 F.2d 119 (2d Cir. 1984), *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587 (Bankr. S.D.N.Y. 2017) —all concern ongoing bankruptcy cases, so are inapplicable.

are filed.  In that situation, the "first-filed rule" states that "[w]here there are two competing

lawsuits, the first suit should have priority."  *New York Marine & Gen. Ins. Co. v. Lafarge N.*

*Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462

F.3d 95, 106 (2d Cir. 2006)); *see also Emp'rs. Ins. of Wausau v. Fox Enter. Grp., Inc.*, 522 F.3d

271, 274–75 (2d Cir. 2008).  There is a strong presumption in favor of the forum where the case

is first filed.  *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131

(S.D.N.Y. 1994).  The rule was developed to "serve [ ] the purposes of promoting efficiency [ ]

and should not be disregarded lightly."  *Id*. at 132 (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*,

946 F.2d 622, 625 (9th Cir. 1991)).  The first-filed rule, as a general matter, "embodies

considerations of judicial administration and conservation of resources by avoiding duplicative

litigation and honoring the plaintiff's choice of forum."  *Emp'rs. Ins. of Wausau*, 522 F.3d at 275

(internal quotation marks and citation omitted).

   "The first-filed rule is not to be applied mechanically, but the party that seeks to deviate

from the rule has the burden of demonstrating that circumstances justifying an exception exist."

*Citigroup Inc. v. City Holding Co*., 97 F. Supp. 2d 549, 555–56 (S.D.N.Y. 2000) (citations

omitted).   The two exceptions are: (1) "where the 'balance of convenience' favors the second-

filed action;" and (2) "where 'special circumstances' warrant giving priority to the second suit."

*Id*. (citations omitted).  The "factors relevant to the balance of convenience analysis are

essentially the same as those considered in connection with motions to transfer venue pursuant to

28 U.S.C. § 1404(a)."  *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C*., 178 F.Supp.2d 459,

465 (S.D.N.Y.2002).  Among those factors are:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location
> of relevant documents and relative ease of access to sources of proof, (4) the
> convenience of the parties, (5) the locus of operative facts, (6) the availability of

process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co.*, 462 F.3d at 106–07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp.2d 341, 343 (S.D.N.Y.2002)) (alteration in original).

"Given the centrality of the balance of convenience, the 'special circumstances' in which a district court may dismiss the first-filed case without this analysis are quite rare." *Emp'rs. Ins. of Wausau*, 522 F.3d at 275. There are only a "limited number of such circumstances." *Id.* "Special circumstances include manipulative or deceptive behavior on the part of the first-filing plaintiff*," New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010), for example, when the first-filed lawsuit is an "improper anticipatory declaratory judgment action," *Berkley Assurance Co. v. MacDonald-Miller Facility Sols., Inc.*, No. 19-CV-7627 (JPO), 2019 WL 6841419, at *6 (S.D.N.Y. Dec. 16, 2019), or where "forum shopping *alone* motivated the choice of the situs for the first suit," *id.* (quoting *Emps. Ins. of Wausau*, 522 F.3d at 275) (emphasis in original) (holding that the *only* two "special circumstances" are (1) when the first-filed action is an improper declaratory judgment and (2) when forum shopping alone motivated the choice of situs for the first suit).

Where the first-filed rule applies, the court may either "stay or dismiss" the duplicative case. *Tarazi v. Quintessential Biosciences, LLC*, No. 15 CIV. 1038 LAK JCF, 2015 WL 4010477, at *3 (S.D.N.Y. July 1, 2015) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).

The Court finds no basis to deviate from applying the first-filed rule in this case. The California court can grant complete relief in the circumstances here; this Court cannot. SVBFT did not violate the terms of any agreement with FCB in filing the action in California before FCB filed the adversary proceeding in New York.

### C. Permissive Abstention

28 U.S.C. § 1334(c) governs abstention.  That statute provides:

(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1)–(2).  Abstention is only mandated with respect to non-core matters pursuant to section (c)(2); permissive abstention from core proceedings pursuant to section 1334(c)(1) is left to the bankruptcy court's discretion.  *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002).  SVBFT only argues for permissive abstention, not mandatory.[4]  The movant bears the burden of establishing that permissive abstention is warranted.  *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021).

Courts have identified twelve factors that may be considered in deciding a motion for abstention:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy

---

[4]      Mandatory abstention under section (c)(2) would not apply to this action.  Under section (c)(2), "abstention is required if each of six conditions is met: (1) the abstention motion is timely; (2) the action is based on a state law claim; (3) the action is 'related to' but does not 'arise in' a bankruptcy case or 'arise under' the Bankruptcy Code; (4) section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be 'timely adjudicated' in state court."  *In re Aramid Ent. Fund, LLC,* 628 B.R. 584, 593 (Bankr. S.D.N.Y. 2021).  At the very least, no action was commenced in state court, so section (c)(2) is inapplicable.

matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden [on] the court's docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 4747785, at *14 (Bankr. S.D.N.Y. 3 Aug. 4, 2015) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y. 2003)).  But courts do not need to consider all twelve factors in every case.  *In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019) (citing *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002)).  These factors ask a court to balance the federal interest in efficient bankruptcy administration against the interest of comity between the state and federal courts.  *See id*.  The comity doctrine likewise applies between two federal courts.  The analysis is not simply a "mechanical" or "mathematical" exercise and the Court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions."  *Id*. (citing *In re Janssen*, 396 B.R. 624, 636 (Bankr. E.D. Pa. 2008)).  Rather, the process thoughtfully assesses what makes good sense in the totality of the circumstances.  *Id*.

Federal courts should proceed carefully before permissively abstaining because they have a "virtually unflagging obligation . . . to exercise the jurisdiction given them and may abstain only for a few extraordinary and narrow exception[s]."  *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015) (citations omitted); *see also CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) ("Courts must be sparing in their exercise of permissive abstention and may abstain only for a few extraordinary and narrow exceptions.").  Given that "federal courts have an obligation to exercise the jurisdiction properly given to them, there is a presumption in favor of the exercise of federal

jurisdiction and against abstention." *Aramid Ent. Fund*, 628 B.R. at 594 (internal quotations omitted).

A court may permissively abstain under section 1334(c)(1) "in favor of another federal court or tribunal, just as it can abstain in favor of a state court." *In re Motors Liquidation Co.*, 457 B.R. 276, 288–89 (Bankr. S.D.N.Y. 2011) (abstaining in favor of another federal court); *see also In re Dana Corp., Inc.*, No. 06-10354 BRL, 2011 WL 6259640, at *3 n.4 (Bankr. S.D.N.Y. Dec. 15, 2011) (same); *In re Lear Corp.,* No. 0914326 ALG, 2009 WL 3191369, at *3 (Bankr. S.D.N.Y. Sept. 24, 2009) (same).

Courts close adversary proceedings which they refuse to hear on the basis of permissive abstention. *See, e.g.*, *In re Cody, Inc.*, 338 F.3d 89, 97 (2d Cir. 2003) (noting that bankruptcy court declined jurisdiction under section 1334(c)(1) and dismissed adversary proceeding); *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, 496 B.R. 706, 713 (S.D.N.Y. 2013) (directing clerk of court to terminate motions and close case when court found that abstention was mandatory under section 1334(c)(2)); *see also In re Falatico-Brodock*, No. 24-60308, 2025 WL 1155625, at *3 (Bankr. N.D.N.Y. Apr. 18, 2025) (directing clerk of court to close adversary proceeding because the court decided to permissively abstain from determining it); *In re Durso Supermarkets, Inc.*, 170 B.R. 211, 216 (S.D.N.Y. 1994) (dismissing claims without prejudice under 28 U.S.C. § 1334(c)(1)). This makes sense, as "[a]bstention motions . . . concern . . . whether a court will exercise the jurisdiction it has," *Fried*, 496 B.R. at 712, and if a court declines to exercise jurisdiction over a case, there is no reason why such a case should remain on the court's docket.

### D. Abstention Under the Declaratory Judgment Act

The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 *et seq*., provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," in a case meeting the DJA's requirements. 28 U.S.C. § 2201(a) (emphasis added). The Second Circuit has "consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd*., 346 F.3d 357, 359 (2d Cir. 2003); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023) ("[S]hould the district court determine . . . that it *has* jurisdiction to declare [the parties' rights], it may nevertheless decline to *exercise* such jurisdiction. That is because the DJA provides only that federal courts '*may* declare the rights and other legal relations of an[ ] interested party seeking such declaration' in 'a case of actual controversy' – not that they *must* so declare.") (internal citation omitted, emphasis in original).

The Second Circuit has established that courts considering whether to exercise their jurisdiction under the DJA should take the following factors into consideration, to the extent they are relevant in a particular case:

> (1) "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy," . . .; and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction[.]

27

*Admiral Ins. Co.*, 57 F.4th at 99–100 (internal citations omitted).  District courts have "broad discretion to weight the factors" enumerated above.  *Id.* at 100.  "[N]o one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment."  *Id.*

## III.   DISCUSSION

### A. This Court Has Nonexclusive Jurisdiction Over the Adversary Proceeding

For the reasons discussed above, FCB's argument that section 1334(e) gives this Court exclusive jurisdiction over the dispute is incorrect.  First, SVBFG's chapter 11 Plan has been confirmed, and the estate was destroyed as of the Plan effectiveness date which has now passed; combined with the fact that SVBFG's Plan assigned every relevant asset (including causes of action or defenses against FCB) to SVBFT, there is no more relevant property of the estate to which section 1334(e) could apply and over which this Court could exercise exclusive *in rem* jurisdiction.

Second, no Plan provision provides that this Court has *exclusive* jurisdiction over *any* cause of action.  It merely provides that the Court will retain the jurisdiction that existed at the time of plan confirmation over various matters, including resolution of Retained Causes of Action.[5]  The retention-of-jurisdiction provision in the Plan reads, in relevant part, "Notwithstanding the entry of the Confirmation Order . . . the Bankruptcy Court shall retain its existing jurisdiction over all matters arising in or out of, or related to, the Chapter 11 Case or the

---

[5]      Nor does the Confirmation Order provide that this Court retain sole and exclusive jurisdiction over the IP dispute.  *See* Confirmation Order ¶ 151, reproduced *supra*.  Compare, also, paragraphs 150 and 151 of the Confirmation Order: paragraph 150 concerns others of FCB's surviving disputes with SVBFT (*not* the IP dispute), and contains the following language which does *not* appear in paragraph 151 (which governs the IP dispute): "If the Debtor and FCB are not able to agree on a consensual resolution with respect to the disputed warrants, the respective rights of the Debtor and FCB to such warrants shall be determined by a separate order *of this Court*."  (Emphasis added.)  This *could* be read as granting exclusive jurisdiction to the Court to decide such issues (though the Court does not so hold at present); the fact that this language does not appear in paragraph 151 is further indication that the parties did not intend for this Court to have the exclusive right to hear and address IP disputes.

Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code."  There is no mention of

exclusive jurisdiction, nor of section 1334(e).  Moreover, since FCB requests as relief a

declaration of non-liability, it relies upon an exercise of this Court's *in personam* jurisdiction,

moving this case outside the realm of its purely *in rem* jurisdiction.  *See Ret. Sys. of Ala. v. J.P.*

*Morgan Chase & Co.*, 386 F.3d 419, 426 (2d Cir.2004) ("[A]n *in personam* action involves a

controversy over *liability* rather than over possession of a thing.") (emphasis added).

    This Court has *nonexclusive* jurisdiction over this case (a point which SVBFT concedes).

### B.  SVBFT Is Not Judicially Estopped from Arguing Abstention

    "Judicial estoppel ensures, *inter alia*, that 'abandonment of a claim to obtain a litigation

advantage precludes the later reassertion of that claim.'"  *Peralta v. Vasquez*, 467 F.3d 98, 105

(2d Cir.2006) (internal citation omitted).  To invoke judicial estoppel in the Second Circuit, "(1)

the party against whom it is asserted must have advanced an inconsistent position in a prior

proceeding, and (2) the inconsistent position must have been adopted by the court in some

matter."  *Id.* (citations omitted); *accord Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 148 (2d

Cir.2005); *Stichting v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005); *Bates v. Long Island R.R. Co.*,

997 F.2d 1028, 1038 (2d Cir.1993).  The doctrine of judicial estoppel requires "a true

inconsistency between the statements in the two proceedings."  *Simon v. Safelite Glass Corp.*,

128 F.3d 68, 72–73 (2d Cir. 1997).  "If the statements can be reconciled there is no occasion to

apply an estoppel."  *Id*. at 73 (citations omitted).  Application of judicial estoppel should be

limited "to situations where the risk of inconsistent results with its impact on judicial integrity is

certain."  *Id*. at 72 (citation omitted); *accord Uzdavines*, 418 F.3d at 148.

    The alleged "inconsistent position" SVBFT took was its representation that the

Confirmation Order and Plan would preserve the parties' rights with respect to the IP issue;

according to FCB, these rights included determination of the IP dispute *solely* through the

medium of an adversary proceeding.  The Confirmation Order and Plan did just that: they did not

expunge or disallow FCB's IP claim, and hence preserved its rights, and gave FCB the *option* to

file an adversary proceeding.  (Confirmation Order ¶ 151).  But nothing in the Confirmation

Order or Plan *requires* FCB to proceed in that manner.  Nor do those documents indicate where

this IP dispute must unfold.  FCB has not been able to identify any inconsistent position SVBFT

took, much less one which has been adopted by a court.  Judicial estoppel therefore does not

apply here.

### C.  First-Filed Case Doctrine Applies

While the parties did not substantially brief the relevance of the first-filed case doctrine,[6]

the Court finds that it applies and calls for dismissal of this case in favor of letting the California

litigation proceed.  This litigation and the California case are substantially similar, as FCB has

admitted that the issue it presents in this adversary proceeding—which entity owns the SVB IP—

will be resolved in the California litigation.  FCB even argues that this adversary proceeding

could resolve the parties' entire dispute in California.  (Response at 27.)  The first-filed case rule

therefore applies.  FCB has not carried its burden of showing that either of the two recognized

exceptions to the first-filed rule applies here.

FCB has not briefed the application of the "balance of convenience" exception to this

matter, so it has failed to carry its burden to show that it applies.  The Court notes that regardless,

the "balance of convenience" analysis cuts in favor of dismissing this action and letting the

California litigation proceed.  The plaintiff chose California as its preferred forum; its counsel

---

[6]      FCB has, however, recognized that this doctrine could apply.  *See* Response at 26–27 (arguing that the
forum-shopping exception to the first-filed rule applies here).  FCB is therefore not prejudiced by this Court's
reliance on the first-filed case doctrine.  FCB's counsel additionally briefly addressed the first-filed doctrine during
argument.

explained during oral argument that the locus of operative facts is California, which also

suggests that documents and witnesses are in or close to California.

FCB claims that SVBFT is engaged in forum-shopping and that this is one of the rare

"special circumstances" constituting an exception to the first-filed case doctrine.  (Response at

26–27.)  This argument rests on the same faulty analysis of the parties' pre-plan confirmation

negotiations that drove FCB's mistaken interpretation of the Plan and Confirmation Order.  FCB

alleges that SVBFT broke with its agreement with FCB to litigate the IP dispute in this Court,

but the Court finds no evidence of such an agreement.  Counsel for SVBFT explained at the

hearing on its Motion that it filed in California because that is where the operative facts

unfolded.  The Court finds that FCB has not set forth evidence of forum shopping.

Accordingly, this Court **DISMISSES** FCB's Complaint in accordance with the first-filed

case doctrine.  For completeness, the Court will briefly review the case for abstention.

### D.  Abstention Is Warranted Under Both Section 1334 and the DJA

The inquiries under section 1334(c)(1) and the DJA as interpreted by the Second Circuit

are similar, and both counsel in favor of abstention.

Most of the section 1334(c)(1) factors cut in favor of abstention.  First, there is no more

estate to be administered, so there is no benefit to the estate either way.  Second, federal IP law

issues dominate entirely over bankruptcy law issues—the issue of IP ownership will be decided

almost exclusively on IP grounds, as well as contract law grounds, and bankruptcy laws will not

be determinative.  (It is also entirely feasible to "sever" the IP and state contract law claims from

core bankruptcy matters, as this proceeding does not hinge on bankruptcy law issues.)  Third,

there is a related proceeding ongoing—the California litigation.  Fourth, this proceeding is only

remotely related to the main case (which is over)—it can be determined entirely separately from

the rest of SVBFT's ongoing litigation.  The burden of taking this case on the Court's docket would be considerable and doubtless duplicative of the work which the California court must do—both parties agree that the California court must determine the question of IP ownership, which is a fact- and law-intensive inquiry.  Taking up that issue through this adversary proceeding when it will be determined elsewhere is wasteful.  Fifth, it appears that FCB is likely engaging in forum shopping by (1) trying to move the California litigation to this district, and (2) filing a declaratory judgment action in this Court instead of waiting for its rights to be determined by the first-filed California litigation.  It appears that FCB is engaged in a race to *res judicata*.  Sixth, SVBFT has requested a jury trial, which can only be granted in the California action.  And while FCB insists that this Court can offer better and more effective remedies than the California court, a conclusion which this Court rejects, that is not a sufficient reason to enable FCB to pit this Court against the California federal district court in a race to determine the merits of this action and the appropriate remedy, if any, owed to either party.

The analysis under the DJA is largely the same.  This adversary proceeding is duplicative of the California action and so will not serve a useful purpose in clarifying or settling the legal issues raised, as the California court is perfectly capable of so doing.  This lawsuit appears to be a race to *res judicata*.  The "better" and "more effective" remedy appears to be permitting the litigation to proceed in California—and this is certainly what judicial economy counsels.

*[remainder of page left blank]*

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, FCB's complaint is **DISMISSED WITH PREJUDICE.**

Dated:  June 25, 2025
        New York, New York

<u>*Martin Glenn*</u>
MARTIN GLENN
Chief United States Bankruptcy Judge